# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW AVILA,<br>Plaintiff,<br>v.<br>FELDER, *et al.*,<br>Defendants. | Case No. 1:21-cv-01510-JLT-BAM (PC)<br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br>(ECF No. 51)<br>**FOURTEEN (14) DAY DEADLINE** |

## FINDINGS AND RECOMMENDATIONS

### I. Background

Plaintiff Andrew Avila is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds against Defendant Michael A. Felder for deliberate indifference to medical care in violation of the Eighth Amendment.

On February 20, 2025, Defendant filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).[1] (ECF No. 51.) Plaintiff opposed the motion on July 1, 2026, (ECF

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 51-3.)

No. 60), and on July 8, 2026, (ECF No. 61).[2] Defendant replied on July 15, 2026, (ECF No. 62).

The motion for summary judgment is deemed submitted. Local Rule 230(l).

## II. Defendant's Motion for Summary Judgment

### A. Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino v. Baca*, 747 F.3d 1152, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. *Id.*

Defendant must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to Plaintiff to show something in his particular case made the existing and generally available administrative remedies effectively unavailable to him. *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendant. *Id.* (quotation marks omitted).

---

[2] Plaintiff's opposition filed on July 8, 2026, is nearly identical to his opposition filed on July 1, 2026. (*Compare* ECF No. 61 *with* ECF No. 60.) The only difference appears to be the inclusion of tables of contents and authorities in the July 8, 2026 opposition. For clarity and consistency, the Court relies only to Plaintiff's July 1, 2026 opposition, ECF No. 60.

**B. Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

The defendant bears the burden of proof in moving for summary judgment for failure to exhaust, *Albino*, 747 F.3d at 1166, and he must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172. If the defendant carries his burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166.

**III. Discussion**

**A. Summary of CDCR's Administrative Review Process**

The California Department of Corrections and Rehabilitation's healthcare grievance process consists of two levels: (1) an institutional-level review conducted by the Health Care Grievance Office; and (2) a headquarters-level review conducted by the Health Care Correspondence and Appeals Branch. Cal. Code Regs. tit. 15, §§ 3999.225-3999.227. Prisoners cannot add new claims during the grievance process. *Id.* §§ 3999.227(a), 3999.229(a)(3). Only

issues addressed in the headquarters-level review are deemed exhausted. *Id.* § 3999.230(i)–(j).

**B. Relevant Allegations in the Second Amended Complaint**

The events in the second amended complaint are alleged to have occurred at Kern Valley State Prison ("KVSP"). Plaintiff alleges: In January 2018, Plaintiff underwent a right eye cataract extraction billed as a "simple, fast" procedure that would leave him with "perfect vision." (ECF No. 36, Second Amended Complaint ("SAC") at 9.) Shortly after the procedure, Plaintiff began to experience very bad pain and started to go "blind in one eye." (*Id.*) He sought health care services for the deteriorating eye condition from Defendant Felder and medical personnel who began to make "everything . . . worse." (*Id.*)

In a January 16, 2018 medical appointment after the cataract extraction, medical personnel documented that Plaintiff's retina had become detached. They also noted that the retina detachment can result in "complete blindness," that treatment entails surgical intervention, and that a surgical consult was on the books. (SAC at 9.) Plaintiff alleges that time was of the essence because the longer a retinal detachment goes untreated, the greater the risk of permanent vision loss, and surgery should be performed within days of diagnosis.

Defendant Felder and Does failed to respond to Plaintiff's expressed pain and actual medical needs until 2021, approximately three years later. Plaintiff suffered from untreated, detached retina and his eyesight began to further deteriorate, the pain got worse, and additional preventable complications arose. He developed chronic endophthalmitis, a painful and dangerous inflammatory infection in the eye that can cause vision loss, which is commonly caused by complication of cataract surgery. When accompanied by vision loss, surgery is generally necessary. Notwithstanding medical personnel's documented diagnosis and Plaintiff's deteriorating vision, surgery was not provided until 2021. Other complications arose too. Medical personnel diagnosed Plaintiff with cystoid macular edema, a form of retinal swelling associated with vision loss. They diagnosed him with uveitis, an inflammatory condition that can lead to permanent blindness. They also diagnosed him with epiretinal membrane, a vision distorting wrinkle of the retina. Defendant Felder documented that "surgery correction" would be the "only effective treatment" for Plaintiff's epiretinal membrane condition, but Plaintiff was not operated

on until 2021. (SAC at 11.) Three years had elapsed since Plaintiff had been diagnosed with a detached retina and at least one year had passed since both the chronic endophthalmitis and epiretinal membrane diagnoses were recorded. Plaintiff repeatedly emphasized his plight to Defendant Felder and medical personnel, explaining that the “pain is severe in my right eye,” continuous, and amplified by “real bad headaches.” (*Id.*) He notified them that his vision had become so bad that it was effectively gone, he could only see light and dark with some shapes, and he could not see well enough to tend to his personal hygiene or see where he was walking. Plaintiff was only offered non-surgical care, such as ointments, pills and over the counter pain medications, despite his complaints and the recognition that surgical intervention was necessary and appropriate. While Plaintiff was losing his eyesight, Defendant Felder was involved with Plaintiff’s medical care in two ways. Defendant Felder assumed the role of treating physician even though he is neither licensed to provide medical care nor trained in medicine. Plaintiff’s vision did not improve under the care of an administrator trained in business administration and environmental management. Plaintiff communicated his medical needs to Defendant Felder during several face-to-face meetings. Plaintiff described intense pain and near blindness. Defendant Felder merely read Plaintiff’s chart and prescribed medication that caused an allergic reaction and further damaged Plaintiff’s right eye.

Plaintiff had an unfolding emergency and Defendant Felder refused for at least a year to authorize emergency outpatient care, including the recommended surgical interventions that Plaintiff needed to save his eyesight. Defendant Felder decided that enhanced medical care was not warranted and would not budge even when Plaintiff reminded Defendant Felder that prison policy obligated him to send Plaintiff to the hospital. Defendant Felder was not moved by his own admission that surgery was the only effective treatment or the chart notes indicating surgery was called for and Plaintiff risked complete blindness. Defendant Felder merely instructed that medical personnel would “continue to monitor” Plaintiff’s condition and that Plaintiff should discuss further with them if the issues still persist. (SAC at 12.)

As noted, this action proceeds only against Defendant Felder for deliberate indifference to medical care in violation of the Eighth Amendment.

### C. Undisputed Material Facts ("UMF")[3]

1. Plaintiff is an incarcerated person in the custody of CDCR. (SAC at 8.)
2. At the time of the complaint, Defendant Felder was the Health Care Chief Executive Officer (CEO) at KVSP. (*Id.* at 11.)
3. Defendant Felder is not a physician and does not have a medical license. (*Id.*)
4. Plaintiff alleged in his complaint that Defendant Felder assumed the role of Plaintiff's treatment physician. (*Id.*)
5. Plaintiff alleged that on January 16, 2018, during a follow up appointment for his previous cataract extraction surgery, medical personnel documented that his retina had become detached. (*Id.* at 9.)
6. Plaintiff alleged that that he was subsequently diagnosed with uveitis and epiretinal membrane, although he did not allege when he was diagnosed with those conditions. (*Id.* at 10.)
7. Plaintiff alleged that Defendant Felder stated that surgery would be his only effective treatment. (*Id.* at 10-11.)
8. Plaintiff alleged that Defendant Felder stated surgery was recommended, took over Plaintiff's medical care without a medical license, and only offered Plaintiff non-surgical care such as ointments, pills, and prescription medication that caused an allergic reaction. (*Id.* at 11-12.)
9. Plaintiff alleged that he did not receive treatment for his right eye until some undisclosed date in 2021. (*Id.* at 10.)
10. There are two levels of review for health care grievances. (ECF No. 51-2, Declaration of Martin ("Martin Decl.") ¶ 3.)
11. The first level of review is the institutional level maintained by the Health Care Grievance Office. (*Id.*)

---

[3] *See* Defendant's Statement of Undisputed Facts, (ECF No. 51-1), and Plaintiff's Response to Defendant's Statement of Undisputed Facts, (ECF No. 60 at 14-21). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

12. The second level of review is the headquarters level which is maintained by the Health Care Correspondence and Appeals Branch. (*Id.*)

13. A disposition at the headquarters level exhausts administrative remedies addressed in the health care grievances.[4] (*Id.*)

14. All health care grievances are tracked and maintained in the regular course of business using the Health Care Appeals and Risk Tracking System (HCARTS). (*Id.* ¶ 4.)

15. Plaintiff filed health care grievance KVSP HC 1900927 on November 15, 2019. (*Id.* ¶ 7.)

16. November 15, 2019, is 668 days from January 16, 2018, the date Plaintiff stated he was informed of his need for eye surgery. (*See* SAC at 9.)

17. November 15, 2019, is 413 days separated from January 1, 2021, the first day in 2021, the year Plaintiff alleged he finally received eye surgery. (*See id.* at 10.)

18. In the grievance, Plaintiff complained that he had worsening eye pain and loss of vision in his right eye. (Martin Decl. ¶ 7, Ex. B at 3.)

19. In the grievance, Plaintiff did not mention Defendant Felder or include allegations that a prison CEO had taken over his medical treatment without a medical license.[5] (*Id.* at Ex. B.)

20. In the grievance, Plaintiff stated medical staff "stuck a niddle [sic] in my eye an injected some kind of fluid." There is no mention in the grievance that Plaintiff was not receiving treatment for his eye or that he requested eye surgery.[6] (*Id.*)

21. Plaintiff stated in the grievance that he has extensive medical files regarding his eye issues. (*Id.*)

---

[4] Plaintiff disputes UMF 13 on the grounds that the prison decided the grievance on the merits at both levels and that it is immaterial. (ECF No. 60 at 15.) Plaintiff does not substantively dispute the contents of UMF 13, and it is therefore deemed undisputed.

[5] Plaintiff disputes UMF 19 on the grounds that it is immaterial, and that the prison's merits decision waived any procedural defect, including the failure to name Felder. (ECF No. 60 at 16-17.) Plaintiff does not substantively dispute the contents of UMF 19 and admits the failure to name Felder. UMF 19 is therefore deemed undisputed.

[6] Plaintiff disputes UMF 20 regarding the failure to mention "denial of surgery," arguing that the grievance explicitly stated that "everything doctors do are making it worse not better." (ECF No. 60 at 17.) Plaintiff does not provide evidence that he requested eye surgery in the grievance, his objection does not create a dispute of fact, and UMF 20 is therefore deemed undisputed.

22. The California Correctional Health Care Services ("CCHCS") investigated Plaintiff's grievance and issued an institutional level disposition on January 23, 2020, recommending intervention. (Martin Decl. ¶ 7, Ex. B at 5-6.)
23. On or around March 2, 2020, CCHCS received Plaintiff's appeal to his grievance. (*Id.* ¶ 7(a).)
24. In his appeal, Plaintiff stated he was dissatisfied with the institutional response because he believed after receiving eye surgery that he would have perfect vision, but instead he had continuing vision loss and eye pain. (*Id.* ¶ 7, Ex. B at 4.)
25. In his appeal, Plaintiff stated that "everything medical doctors do is making it worse not better." (*Id.*)
26. In his appeal, Plaintiff did not mention any person by name. The only people he refers to are ambiguous medical doctors.[7] (*Id.*)
27. In his appeal, Plaintiff did not mention Defendant Felder or the involvement of any chief executive officers or administrative staff in his medical care.[8] (*Id.*)
28. In his appeal, Plaintiff complained that he did not have perfect vision following his eye operation. (*Id.*)
29. CCHCS issued a headquarters level response to Plaintiff's appeal on May 8, 2020, with a disposition of no intervention. (*Id.* ¶ 7(a).)
30. In the response, CCHCS noted that Plaintiff was being actively treated for his eye pain and vision loss and that he had an upcoming ophthalmology appointment. (*Id.* ¶ 7, Ex. B at 1-2.)
31. Grievance KVSP HC 19000927 is the only health care grievance Plaintiff submitted

[7] Plaintiff disputes UMF 26 on the grounds that it is immaterial and that the prison's merits decision waived any procedural defect. (ECF No. 60 at 19.) Plaintiff does not substantively dispute the statement and UMF 26 is therefore deemed undisputed

[8] Plaintiff disputes UMF 27 on the grounds that it is immaterial, arguing that Felder, as the CEO of healthcare at KVSP was the responsible official, the merits decision waived the defect, and the "absence of a reference to 'CEOs' or 'administrative staff' does not defeat exhaustion because the grievance provided sufficient notice of the claim." (ECF No. 60 at 19-20.) Plaintiff does not substantively dispute the statement, and his argument includes a tacit admission that the grievance did not mention Felder, chief executive officers, or administrative staff in his appeal. UMF 27 is therefore deemed undisputed.

during the three-year time period mentioned in the complaint, 2018-2021.[9] (*Id.* ¶ 5, Ex. A.)

32. Plaintiff had not submitted any grievance that alleged Plaintiff was receiving medical care from Defendant Felder or other executive officers, or that he was denied medical treatment for his eye pain and vision loss.[10] (*See id.* ¶¶ 5-7, Exs. A-B.)

**D. Parties' Positions**

Defendant contends that Plaintiff filed only one health care grievance during the timeframe related to the allegations in his complaint, but Plaintiff never gave CDCR notice about his distinct claim against Defendant Felder. Plaintiff did not submit any grievance that alleged Plaintiff was receiving medical care from Defendant Felder or that he was denied medical treatment for his eye pain and vision loss. Neither Plaintiff's health care grievance nor his appeal provided prison officials with notice of Plaintiff's present claim that Defendant Felder, a CEO at KVSP, assumed the role of treating physician without a medical license and began treating Plaintiff's eye condition. Nor did it provide notice that Defendant Felder or the medical staff at KVSP were deliberately indifferent to Plaintiff's medical needs during the time period between when Plaintiff stated he was told he needed surgery and when he stated he received surgery.

Defendant further contends that there is no connection between Plaintiff's grievance and his current allegations against Defendant Felder. Plaintiff did not mention Defendant Felder in his health care grievance, and he did not provide any information that would indicate Defendant Felder was involved with Plaintiff's treatment, or that someone was practicing unlicensed medicine. Plaintiff also did not mention in his grievance that he was being denied care or that he believed he should have eye surgery. Plaintiff did complain that he was suffering from eye pain

[9] Plaintiff disputes UMF 31 asserting he was not required to file additional grievances and the fact that he did not file additional grievances does not suggest that he failed to exhaust. (ECF No. 60 at 20-21.) Plaintiff does not substantively dispute the statement and tacitly admits he did not file other health care grievances during the relevant time period. UMF 31 is therefore deemed undisputed.

[10] Plaintiff disputes UMF 32 that he submitted "no grievance alleging Felder was involved" on the grounds that it is immaterial and contradicted by his declaration. (ECF No. 60 at 21.) Plaintiff cites no admissible evidence, including in his declaration, demonstrating he submitted a grievance alleging Felder was involved. Plaintiff's declaration includes an admission that he did not mention Defendant Felder by name in the grievance and that he has not filed any other health care grievances regarding his eye condition. (*See* ECF No. 60 at 25, ¶¶ 12. 13.) UMF 32 is therefore deemed undisputed.

and vision loss, and that he thought medical doctors were making his condition worse. Defendant concedes this arguably put prison officials on notice that Plaintiff had eye pain, vison loss, and that he was dissatisfied that he was continuing to have these issues despite being actively treated. However, CDCR and CCHCS could only address the issues Plaintiff raised in the grievance, but Defendant Felder is not mentioned in the grievance, and he is not a doctor, so officials could not have known about his alleged involvement from Plaintiff's grievance and appeal.

In opposition, Plaintiff argues that the undisputed record demonstrates that he satisfied the exhaustion requirement under the PLRA. The prison had sufficient notice of his claims, investigated it thoroughly, and issued decisions on the merits at all levels of review. Plaintiff contends that under binding Ninth Circuit precedent in *Reyes v. Smith*, 810 F.3d 654 (9th Cir. 2016), Defendant's procedural objections are waived. Plaintiff further contends that his own sworn declaration establishes that he met face-to-face with Defendant Felder on multiple occasions and explicitly complained about the denial of necessary surgical care. Plaintiff argues these meetings provided Defendant Felder with direct, personal notice of Plaintiff's serious medical needs and the ongoing failure to address them.

Specifically, Plaintiff contends that Defendant's argument that he failed to exhaust his administrative remedies because he did not mention Defendant Felder by name in HC 19000927 is foreclosed by *Reyes*. He contends his grievance provided the prison with clear notice of the core problem, including his injury - "Severe pain in the right eye. Vision in right eye is gone;" the complaint – "Everything medical doctors do is making it worse not better;" and the request – referral to ophthalmology for severe pain and loss. (ECF No. 60 at 6, citing Martin Decl. at Ex. B.) Plaintiff asserts this is the exact issue he now raises in his complaint: the failure of prison medical staff (and Defendant Felder) to provide adequate care for his serious eye condition.

Plaintiff further asserts that the prison's own investigation confirmed that it understood the nature of Plaintiff's complaint. The institutional level response identified "severe pain in the right" and "vision in the right eye is gone" as the issues and the headquarters response documented the full extent of Plaintiff's medical conditions. (ECF No. 60 at 6, citing Martin Decl. at Ex. B.) Plaintiff points out that the prison did not reject his grievance for failing to name

Defendant Felder and it instead investigated the grievance, reviewed his medical records, identified the serious conditions, and issued a substantive decision at the institutional level. Plaintiff argues that, under *Reyes*, this is a waiver of any procedural defect, and the Ninth Circuit has explicitly held that when the prison decides a grievance on the merits, it waives any procedural defect, including the failure to name a specific defendant. (ECF No. 60 at 7, citing *Reyes*, 810 F.3d at 658-59.) Plaintiff claims that the prison had the authority to reject his grievance for failing to name Defendant Felder, but it chose not to do so. Because the prison accepted the grievance, investigated it, and issued a decision, it waived the defect.

Plaintiff also argues that his sworn declaration establishes that Defendant Felder had direct, personal notice of Plaintiff's medical needs, indicating that his sworn declaration states: (1) He had multiple face-to-face meetings with Defendant Felder during the relevant period; (2) During these meetings, he complained directly to Felder about the severe pain and vision loss in his right eye; (3) He informed Felder that medical staff had recommended surgical intervention and that time was of the essence; (4) Defendant Felder, despite having no medical license, assumed the role of treating physician and refused to authorize emergency outpatient care and surgical interventions; and (5) Defendant Felder stated that enhanced medical care was "not warranted" and instructed Plaintiff that medical personnel would "continue to monitor" his condition. (ECF No. 60 at 8.) Plaintiff claims these facts are dispositive as Defendant Felder had actual personal knowledge of Plaintiff's serious medical needs and consciously disregarded them, and therefore the purpose of the PLRA's exhaustion requirement was fully satisfied.

Additionally, Plaintiff argues that Defendant has failed to meet his burden of proof. Plaintiff claims that Defendant's motion raises questions of good faith, is contrary to binding precedent, is inherently contradictory, relies on the discredited regulatory framework of Title 15, §§ 3084-3086, is contrary to the purpose of the PLRA, and raises questions under Rule 11.

In reply, Defendant argues that Plaintiff did not genuinely dispute any of Defendant's facts and did not raise any legal argument sufficient to defeat summary judgment. Defendant contends that Plaintiff implicitly admits that administrative remedies were available and concedes that the one relevant grievance did not refer to Defendant. Defendant further contends that failure

to identify who the grievance is concerning is more than a waivable procedural error, and Defendant's involvement in Plaintiff's health care could not have been inferred from Plaintiff's grievance. Defendant asserts that there is nothing in the grievance that would indicate it was about a CEO practicing unlicensed medicine and acting with deliberate indifference to Plaintiff's medical care. Even if Defendant were aware of his own allegedly unconstitutional conduct it does not excuse Plaintiff from exhausting his administrative remedies before filing suit. Defendant agrees that one of the purposes of the exhaustion requirement is to afford prison officials the opportunity to address the complaint internally, but Plaintiff did not afford prison officials that opportunity when he failed to identify Defendant or that he was being denied surgery in the relevant grievance. Because Plaintiff did not mention Defendant by name or include any information about him, there was insufficient information in the grievance to allow prison officials to make the inference that the grievance was about Defendant. Defendant asserts that Plaintiff's remaining arguments also fail, and that Defendant's motion did not cite the regulations Plaintiff claims are outdated.

**E. Analysis**

As a preliminary matter, it is undisputed that Plaintiff availed himself of the administrative grievance process during the relevant time period. Plaintiff pursued KVSP HC 1900927, the relevant grievance, through both levels of review. UMF 15, 22, 23, 29. For this reason, the Court finds that Defendant carried his burden of proof that there was an available administrative remedy. The Court therefore turns to the issue of whether Plaintiff adequately exhausted his administrative remedies as to the claims against Defendant Felder.

In the original grievance KVSP HC 1900927, submitted to the institutional level review, Plaintiff complained that he had worsening eye pain and loss of vision in his right eye and that he has extensive medical files regarding his eye issues. UMF 18, 21. Plaintiff stated medical staff "stuck a niddle [sic] in my eye an injected some kind of fluid." UMF 20. It is undisputed that Defendant Felder was not mentioned in the original grievance at the institutional level. UMF 19. Nor did Plaintiff describe Defendant Felder's involvement in the issue. Plaintiff did not allege that a prison CEO had taken over his medical treatment without a license or that Plaintiff was not

receiving treatment for his eye or that he requested eye surgery. UMF 19, 20. Plaintiff therefore did not sufficiently describe the alleged misconduct by Defendant Felder to place the prison on notice of the claims upon which this action proceeds. There are no allegations in the grievance that Defendant Felder assumed the role of treating physician without a license or training or that Defendant Felder denied or delayed Plaintiff's medical treatment or surgery for his eye.

In the appeal of KVSP HC 1900927, submitted to the headquarters level of review, Plaintiff stated he was dissatisfied with the institutional response because he believed after receiving eye surgery that he would have perfect vision, but instead he had continuing vision loss and eye pain. UMF 24. Plaintiff also stated, "everything medical doctors do is making it worse not better." UMF 25. Plaintiff complained that he did not have perfect vision following his eye operation. UMF 28. As with his original grievance, it is undisputed that Defendant Felder was not mentioned in the appeal at the headquarters level. UMF 27. It is also undisputed that Plaintiff did not mention any person by name in the appeal, referring only to "medical doctors." UMF 26. Plaintiff also did not mention the involvement of any chief executive officers or administrative staff in his medical care. UMF 27. Plaintiff therefore did not sufficiently describe the alleged misconduct by Defendant Felder to place the prison on notice of the claims upon which this action proceeds. There are no allegations in the appeal that Defendant Felder assumed the role of treating physician without a license or training or that Defendant Felder denied or delayed Plaintiff's medical treatment or surgery for his eye.

Plaintiff relies on the Ninth Circuit's decision in *Reyes*, to argue that the prison waived any procedural defect in the grievance, including the failure to name Defendant Felder, by deciding the grievance on the merits, thereby exhausting Plaintiff's administrative remedies. (ECF No. 60 at 5-7.) In *Reyes*, the plaintiff filed a health care grievance regarding the prison's reduction and discontinuation of his pain medication regimen, which included morphine. The institution denied the plaintiff's grievance and subsequent appeals, noting in its responses that the prison's Pain Management Committee ("PMC") had "determined narcotics were not medically necessary" or had "recommended against narcotics." 810 F.3d at 656. The plaintiff then filed suit against two members of the prison's PMC and other prison officials, alleging they had violated

the Eighth Amendment. The district court granted a motion to dismiss for failure to exhaust administrative remedies as to the two PMC members because the plaintiff had not named them in his grievance, contrary to Cal. Code Regs. tit. 15 § 3084.2(a) (2015). *Id.* at 656-57.

The Ninth Circuit reversed, reasoning that the grievance "plainly put prison officials on notice of the nature of the wrong alleged in his federal suit—denial of pain medication by the defendant doctors. Prison officials ... plainly knew that the Pain Management Committee, of which Drs. Smith and Heatley and Smith were members, had decided Reyes should not receive the medication; that decision was cited repeatedly by the prison administrative in denying Reyes' grievance." *Reyes*, 810 F.3d at 659. Thus, even though the plaintiff had not named the specific defendants in his grievance and appeals, "prison officials . . . easily identified the Pain Management committee's involvement in the issue." *Id.* at 659. The Ninth Circuit also held a prisoner exhausts administrative remedies under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. *Id.* at 658.

The instant case is distinguishable from *Reyes*. First, unlike in *Reyes*, Plaintiff did not allege wrongdoing by a distinct committee whose membership would have been known or easily identified by reviewing prison officials. The involvement of Defendant Felder is not "easily identified" in Plaintiff's grievance. *Reyes*, 810 F.3d at 659. Defendant Felder is not named in the grievance, and the grievance did not include allegations that a prison CEO, a non-doctor, had taken over his care without a medical license. UMF 19. Plaintiff's appeal also did not name a specific individual, referring only to medical doctors, nor did it mention the involvement of any chief executive officers or administrative staff in his medical care. UMF 26-27. Second, unlike in *Reyes,* at no level of review did prison officials render a decision on the specific claims raised in this action regarding delay or denial of eye surgery/treatment or Defendant Felder assuming the role of Plaintiff's treating physician without a license or training.

Plaintiff claims that his sworn declaration establishes he met face-to-face with Defendant Felder on multiple occasions and complained about the denial of necessary surgical care. Plaintiff argues that these meetings provided Defendant Felder with personal knowledge of

Plaintiff's serious medical needs and the purpose of the PLRA exhaustion requirement was met. Relevant here, Plaintiff declares that he had multiple face-to-face meetings with Defendant Felder, which occurred both before and during the pendency of his health care grievance. (ECF No. 60 at 24, ¶ 5.) During these meetings, Plaintiff complained directly to Defendant Felder about the "severe pain in [his] right eye, the progressive loss of vision, and the refusal of medical staff to authorize the surgical interventions recommended by ophthalmologists." (*Id.* ¶ 6.) Plaintiff informed Defendant Felder that medical staff had recommended surgery and that time was of the essence, explaining that he could not see well enough to tend to his personal hygiene or see where he was walking. (*Id.* ¶ 7.) Defendant Felder, despite having no medical license, assumed the role of Plaintiff's treating physician, and told Plaintiff that enhanced medical care was not warranted and that medical personnel would continue to monitor his condition. (*Id.* ¶ 8.) Defendant Felder refused to authorize emergency outpatient care, including the recommended surgical interventions for at least one year and repeatedly denied Plaintiff's requests for surgery. (*Id.* ¶ 9.)

It is unclear how Plaintiff's meetings with Defendant Felder would put prison officials on notice that Plaintiff was complaining about Defendant Felder practicing unlicensed medicine or denying Plaintiff's treatment or surgical interventions, when he did not say so in his grievance. It is undisputed that there is no mention of these issues in the grievance at any level of review. The Court does note that on January 23, 2020, Defendant Felder completed the institutional level response to Plaintiff's grievance KVSP HC 19000927, but no interview was conducted. (Ex. B to Martin Decl., ECF No. 51-2 at 11-12.) However, neither the grievance nor the meetings with Defendant Felder could possibly have put the prison on notice of Plaintiff's claim that Defendant Felder assumed the role of Plaintiff's treating physician without a medical license or training or was denying Plaintiff's medical care for his eye. Plaintiff admits that he did not mention Defendant Felder by name in the grievance, believing that "medical doctors" were solely responsible for his care, and that he "only later discovered—through the litigation process—that Felder was making medical decisions without a license and was the cause of my delayed care." (ECF No. 60 at 25, ¶ 12.)

The Court concludes that Defendant has met his burden of proof that KVSP HC 19000927 did not exhaust Plaintiff's administrative remedies with respect to his claims against Defendant Felder in this action. The burden therefore shifts to Plaintiff to come "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Plaintiff appears to claim that remedies were unavailable to him because the regulatory framework relied upon by Defendant (Cal. Code Regs. tit. 15, §§ 3084-3086) has been condemned as a "dead end" that rendered administrative remedies "unavailable," citing *Ross v. Blake*, 578 U.S. 632 (2016). (ECF No. 60 at 11.) Plaintiff's argument is not persuasive. Defendant did not cite the regulations that Plaintiff claims have been discredited. (*See* ECF No. 51.) The Court therefore finds it unnecessary to address Plaintiff's remaining arguments related to these regulations. Further, as the Court will recommend Defendant's motion be granted, it also is unnecessary to address Plaintiff's arguments that Defendant's motion is contrary to the PLRA and raises questions under Federal Rule of Civil Procedure 11. (*See* ECF No. 60 at 12-13.)

**IV. Conclusion and Recommendations**

Based on the foregoing, the Court finds that Plaintiff has failed to exhaust his administrative remedies as to his claims against Defendant Felder. Accordingly, it is HEREBY RECOMMENDED that:

1. Defendant Felder's motion for summary judgment for failure to exhaust administrative remedies, (ECF No. 51), be GRANTED; and
2. This action be dismissed, without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page**

**number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 11, 2026**

/s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE